**IN US DISTRICT COURT OF THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| ZACH ROWAN AND MACKENZIE ROWAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Cause No: |
| ) | |
| FOREST RIVER, INC. ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DAMAGES**

Now comes Plaintiff's Zach Rowan and Makenzie Rowan ("Plaintiffs") and in their Complaint for damages against Defendant, Forest River, Inc. ("Defendant") states as follows:

1. The Plaintiffs, Zach Rowan and Makenzie Rowan, are adult resident citizens, of the State of Tennessee, and were residing in the City of Jackson, Tennessee when the losses alleged herein occurred.

2. The Defendant, Forest River, Inc, is a corporation duly organized and existing under the laws of the State of Indiana, and does business within the State of Indiana, and whose registered agent for service of process is in Indiana.

3. At all times herein material, Defendant was engaged in the design and manufacture, and distribution of Motorized Recreational Vehicles, those being ultimately sold in the State of Indiana, among other states and in this instance the State of Alabama.

4. At all times herein material, Defendant was engaged in the manufacture of Recreational Vehicles, including the Recreational Vehicle that was designed and manufactured by Defendant hereinafter described and purchased by the Plaintiff.

5. Defendant designed, manufactured and placed into the stream of commerce a White Columbus Recreational Vehicle, Model No. 388FK, bearing stock number identification No. L6011038, VIN: 4x4FCCMR20L6011038. This Columbus model ("camper") was purchased by the Plaintiff from Forest River Distributor Triple H Properties, Inc., on July 20, 2020 in Haleyville, Alabama.

6. On July 27, 2020, the camper was delivered to the Plaintiff's residence.

7. On August 3, 2020 when Plaintiffs hooked up the camper for the first time, there were multiple issues with the camper: The hot water did not work; the ice machine did not work; the awning light did not work; the storage door was locked and would not unlock; the bedroom door would only open 1/3 of the way; camper has a smaller "camper king" rather than advertised "residential king" and the control application would not connect to the camper.

8. On August 4, 2020 distributor Triple H Properties, Inc. was notified and on that date, it was further found water all under rim of camper and it was noticed that the TV/Fireplace wall was bowed from water damage and there was a puddle under TV/Fireplace. On August 5, 2020 a service technician sent by distributor indicated there was not a drain pipe connected to the shower drain and that shower drain was never hooked up or installed incorrectly. Water gushed out and technician indicated 100 gallons of water was being held in underbelly of camper. He indicated the inside wall would have to be rebuilt, but there was mold and mildew damage to floor and interior walls regardless.

9. Triple H Properties, Inc. was contacted and indicated claim would be submitted by August 7, 2020 and the claim had not been submitted by August 12, 2020. On August 18, 2020 Triple H Properties, Inc. indicated they would be dealing with manufacturer Forest River, Inc. going forward.

10. On August 19, 2020 Plaintiffs got a call from "Columbus" they understood to be Defendant and it was indicated the camper would be picked up fixed and returned and Plaintiffs indicated they did not want the same camper returned with the water damage that was sustained.

11. After several days of not returning calls, Defendant represented a buy-back could not be guaranteed on August 24, 2020 and Defendant eventually picked up the camper on September 8, 2020. On September 9, 2020, Defendant representative indicated Defendant was a month behind on service units and could not say when service team could address the issues, but it could be weeks.

12. The camper was returned on October 20, 2020 with no proof of repairs, and the underbelly and insulation were not replaced. The door handles on the shower fell off the first night it was returned and the bedroom window did not close properly allowing outside air in.

13. On first night trying to use camper, after its return, on November 21, 2020 there was a puddle of water under the underbelly where it was patched and not replaced. Defendant was notified immediately. Defendant offered buyback or trade assist with manufacturer Defendant and Plaintiffs agreed.

14. On November 25, 2020 it was indicated only $5000 would be offered in trade assist giving $45,000 trade in value with a $12,000 shortfall from the purchase price. Dealer did not want to engage in trade assist with past issues with camper.

15. On November 30, 2020 Defendant was told only option was buy back. There has been no resolution since that time.

16. At the time and as a result of the aforesaid incident, Plaintiff sustained the following damages:

(a) After paying the payments for the contract price of $62,000, Plaintiffs were never in possession of a camper fit for its ordinary use while making payments on the contract and insurance; all amounts paid into the contract should be returned.

(b) All incidental expenses in dealing with the service of the camper.

(c) Attorney's fees and costs.

17. The acts and/or omissions of the Defendants were the proximate cause of the aforesaid incident complained of and the resulting injuries to Plaintiff, and the acts and/or omissions of Defendants constitute the combined, concurrent and joint negligence, violation of the Magnuson Moss Act, breach of express warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, and strict liability for which Defendants are liable to Plaintiff.

## COUNT I: MAGNUSON MOSS ACT

18. The breach of the statutory implied warranty also gives rise to the violation of the Magnuson Moss Warranty Federal Trade Commission Improvement Act, Section 110(C), 15 U.S.C.A., Section 2301, et seq. Plaintiff has given proper notice under the Act. With timely written and oral notice for the purpose of satisfying the requirements of the Magnuson Moss Act, and would further show that they have given the Defendant Forest River Inc., many opportunities to cure said defects and would further show that they have totally failed to make the camper fit for the purpose for which it was manufactured and for its intended use which impairs the use, market value, or safety of the camper to the Plaintiff after a reasonable number of attempts, and Plaintiff has, therefore, been damaged and is entitled to recover under this act.

19. Plaintiff would show that as a result of the breach of the foregoing mentioned warranties, they are entitled to recover the following, including, but not limited to, the purchase price of the camper, and consequential damages consisting of sales tax, license, registration and

other fees, finance charge, towing expenses, rental expense, time and inconvenience, loss of business opportunity and all costs and expenses, including attorney fees based on actual time expended, determined by this Court to have been reasonably incurred by the Plaintiff or in connection with the commencement and prosecution of such action as provided in the Magnuson Moss warranty Federal Trade Commission Improvement Act, Section 110(C), 15 U.S.C.A., Section 2301, et seq.

## COUNT II: STRICT LIABILITY

20. All of the averments contained in paragraphs 1 through 19 are incorporated herein by reference as if fully set forth below.

21. Immediately prior to the time Plaintiff sustained the damages set forth above, Plaintiff had discovered said defects the camper immediately upon delivery of the camper. Plaintiff is informed and believes that the camper was then in the condition existing when it was sold and/or delivered the product to Plaintiffs. Plaintiffs are informed and believes that the same condition of the camper existed when it was sold and delivered the product to Plaintiffs, and the condition of the product remained substantially unchanged when Plaintiffs noticed the defects immediately upon delivery.

22. The camper was defective in its design, workmanship, construction, manufacture, marketing and testing and investigation of component parts, and as a result was defective, unsafe and inadequate for the use for which it was made, intended to be used and was being used.

23. The camper, because of its defective design, workmanship, construction, manufacture, marketing and testing and investigation of component parts, was inherently dangerous and capable of causing injury was unreasonably dangerous to potential purchasers and users and the Plaintiffs.

24. The camper was additionally defective in design, workmanship, manufacture, production, marketing and testing and investigation of component parts, and inherently dangerous. The camper was so defectively designed and manufactured in that the point of operation of the machine exposed the operator to unreasonable risks of injury. As a result, the camper was unreasonably dangerous to potential purchasers and users and to the Plaintiffs. Moreover, it was unfit for its most basic intended use.

25. The Defendants knew, or should have known, that the camper would be used in the manner complained of, and, nevertheless, permitted the purchase of said camper by purchasers and in particularly the Plaintiffs for such use without adequate point of operation guarding and without adequate safety warnings and/or safety instructions or notice of defects.

26. The camper, were it properly designed, manufactured and marketed would not have been inherently dangerous but, because of its defective design, manufacturing and marketing, it was unreasonably dangerous to Plaintiff who was unaware of its dangers, hazards, and peril and general unfitness for ordinary use.

27. As a direct and proximate result of the defects in Defendants' camper and of the failure of Defendants to give Plaintiffs warnings of those defects, Plaintiffs were damaged and inconvenienced as set forth above.

## COUNT III: BREACH OF EXPRESS WARRANTY

28. All of the averments contained in paragraphs 1 through 27 are incorporated herein by reference as if fully set forth below.

29. Plaintiff avers that Defendants are liable for the damages to Plaintiff and for the resulting damages in that the camper was defectively designed and manufactured and in a defective

condition when sold to the Plaintiff thereby violating the express warranties which were attached to and accompanied this product. See Limited Warranty attached as Exhibit A.

30. Before Plaintiff purchased the camper, Defendants described the product to Plaintiff as being free from defects in material and workmanship. Defendants expressly warranted "that for one year or 12,000 miles the body structure of the recreational vehicle shall be free of substantial defects in materials and workmanship attributable to the warrantor." To the Plaintiff, this description meant that the camper could be safely used as warranted for the purpose of recreational camping and personal use as described in the warranty. This description was made a part of the basis of the bargain and created an express warranty that the product would conform to description and be safe for use in the manner it was being used at the time of the incident and occurrence described in this complaint.

31. In purchasing the camper, Plaintiff relied upon the skill and judgment of Defendants and upon Defendants express warranty as specified above.

32. As a result of the defects in material and workmanship described above, Defendants breached their express warranty that the camper was in a marketable condition, safe for use by ultimate users and consumers and in particular the Plaintiffs.

33. As a direct and proximate result of the breach of express warranty by Defendants, and each of them, Plaintiff sustained serious damages as set forth above.

## COUNT IV: BREACH OF IMPLIED WARRANTY OF FITNESS

34. All of the averments contained in paragraphs 1 through 33 are incorporated herein by reference as if fully set forth below.

35. Defendants impliedly warranted that the camper was fit for the purpose for which it was designed, that it was a safe and suitable specifical for the use of personal use and recreational

camping and that said product was fit and suitable for that purpose. In reliance upon Defendant's skill and judgment and the implied warranties of fitness for that purpose, Plaintiff purchased the camper as hereinabove described.

36. The camper was, in fact, upon delivery not fit for use for its intended purpose and Defendants breached the implied warranties set forth above.

37. As a direct and proximate result of that breach of warranty, Plaintiff sustained serious damages as set forth above.

38. Defendants' actions constitute a breach of the implied warranty.

## COUNT V: IMPLIED WARRANTY OF MERCHANTABILITY

39. All of the averments contained in paragraphs 1 through 38 are incorporated herein by reference as if fully set forth below.

40. Defendants impliedly warranted that the above-mentioned camper was of merchantable quality, fit, safe, and in proper condition for the ordinary use for which recreational campers are designed and used.

41. In reliance upon said warranty of merchantability, Plaintiff purchased the camper as hereinabove described.

42. The camper was not of merchantable quality and was unfit, unsafe, and unsuitable for the purpose for which it was intended.

43. As a direct and proximate result of that breach of warranty, Plaintiff sustained serious damages as set forth above.

44. Defendants' actions constitute a breach of the implied warranty of merchantability.

## COUNT VI: NEGLIGENCE

45. All of the averments contained in paragraphs 1 through 44 are incorporated herein by reference as if fully set forth below.

46. Defendants were careless and negligent in designing, manufacturing, testing, selling and placing into the stream of commerce, the camper described in this complaint in such defective condition, and in failing to warn potential purchasers and users of the inherently dangerous characteristics of that product.

47. The direct negligent acts of the Defendant was the proximate result of Plaintiff sustaining serious damages as set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants on Counts One, Two, Three, Four, Five and Six for actual damages in an amount to be determined at the trial of this cause.

**PLAINTIFF REQUESTS TRIAL BY JURY.**

Respectfully submitted,

CAMDEN & MERIDEW, P.C.

/s/Corey R. Meridew \_\_\_\_
Corey R. Meridew, #28687-29
Camden & Meridew, P.C.
10412 Allisonville Road, Suite 200
Fishers, IN 46038
Tel: (317) 770-0000
Fax: (888) 339-9611
E-mail: cm@camlawyers.com
           dg@camlawyers.com